O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>ONEBEACON INSURANCE GROUP, LTD; THE EMPLOYERS' FIRE INSURANCE COMPANY,<br><br>       Defendants.<br>_____ | Case No.<br><br>CV 12-08399 DDP (JCGx)<br><br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br>Dkt. Nos. 36, 46, 47, 49 |

Presently before the court are four separate motions for partial summary judgment on various claims and counterclaims in this matter. Plaintiff and Counterdefendant Nautilus Insurance Company filed two of the motions. (Dkt. Nos. 36, 46.) Defendant and Counterclaimant Bell Event Services filed one motion (Dkt. No. 47.) Defendant and Counterclaimant The Employers' Fire Insurance Company filed the fourth motion. (Dkt. No. 49.) The court has considered the submissions of the parties and heard oral argument on all four motions, which overlap significantly. Accordingly, this Order is organized by issue rather than by motion.

**I.   Background**

The Fiesta Hermosa Festival ("Fiesta") is a semi-annual outdoor festival held in the City of Hermosa Beach over the Memorial and Labor Day weekends. (Employers' Fire Insurance Company Statement of Facts ("Employers' SOF"), ¶ 1.)  The May 2010 Fiesta was organized, planned, marketed, produced, and overseen by the Hermosa Beach Chamber of Commerce ("Chamber"). (Id., ¶ 2.)

The Chamber hired Bell Event Services ("Bell"), a company that coordinates special events, to assist in planning, managing and producing the May 2010 Fiesta. (Employers' SOF, ¶ 11.) Bell entered into an agreement with the Chamber ("Bell-Chamber Contract"), under which Bell was to provide sixteen specific services at the event. (Nautilus Insurance Company's Statement of Facts ("Nautilus SOF"), ¶ 12; Employers' SOF, ¶ 3.)  Bell's duties under the Bell-Chamber contract did not include "Clean-up" or "Security," which were to be sub-contracted on an "as needed basis" and paid for separately by the Chamber. (Id., ¶ 5.)  The Chamber contracted with Specialty Maintenance ("Specialty") to provide cleaning services and Frontline Protection Services ("Frontline") to provide security during the May 2010 Fiesta. (Id., ¶¶ 16, 19.)

The Bell-Chamber Contract specified that event sponsors and commercial vendors were to be "procured, marketed and managed" by the Chamber itself. (Id., ¶ 8.) In keeping with these responsibilities, the Chamber hired Lynne La Fleur ("La Fleur") to serve as the Fiesta's sole Food Court Manager. (Id., ¶ 9.)  La Fleur was the only person charged with procuring and managing the food vendors during the Fiesta, and acknowledged that "the Chamber control[led] the food vendors."  (Id., ¶¶ 11-12.)

The Bell-Chamber contract also required the Chamber to obtain event insurance and to name both Bell and the City of Hermosa Beach ("the City") as Additional Insureds. (Bell SUF ¶ 21.) Bell, in turn, was required to obtain its own commercial liability insurance. (Employers' SUF ¶ 23.)

The Chamber obtained a commercial general liability policy ("Nautilus Policy") from Plaintiff/Counterdefendant/Movant Nautilus Insurance Company ("Nautilus"). (Nautilus' SOF, ¶ 1.) Though Bell was not a named insured under the Nautilus Policy, both Bell and the City were named as additional insured parties under the terms and conditions of an additional endorsement to the Nautilus Policy. (Nautilus' SOF, ¶ 3-4.) Under this endorsement, the Nautilus Policy covered both bodily injury and property damage caused by the Chamber's acts or the acts of those acting on the Chamber's behalf "in the performance of [the Chamber's] ongoing operations for the additional insured(s)." (Nautilus SOF, ¶ 6; Employers' SOF, 22.) Bell obtained separate commercial liability insurance from Employers' Fire Insurance Company ("Employers"). (Employers' SOF, ¶ 23.)

During the May 2010 Fiesta, a fish taco booth operated by the South Bay Surf Club ("Surf Club") spilled grease on the ground. (Id. ¶ 25.) Specialty, the cleaning and maintenance company hired by the Chamber, failed to clean the grease spill because it was unaware of it at the time. (Id., ¶ 18.) The Chamber's Food Court Manager, La Fleur, knew the Surf Club spilled the grease, but did not block it off, ensure it was properly cleaned, or alert Specialty to the spill. (Id., ¶¶ 25, 28.) Fiesta attendee Steven

3

Rodriguez ("Rodriguez") slipped on the grease and suffered a knee injury ("the underyling injury").

On February 10, 2011, Rodriguez filed a personal injury action against the City and the Chamber in Los Angeles County Superior Court, <u>Steven Rodriguez v. Hermosa Beach Chamber of Commerce, et. al.</u>, Case No. YC064185 ("Underlying Action").[1] (Nautilus' SOF, ¶ 19; Employers' SOF, ¶ 50.) Bell was not initially named as a defendant in the Underlying Action. Bell was brought into the case, however, at the direction of the attorney retained by Nautilus. (Nautilus' SOF, ¶ 21; Employers' SOF, ¶¶ 40, 41.) Despite being advised by the Chamber's Executive Director that "Bell Event Services was not responsible for any of this," the Nautilus coverage attorney continued to pursue a case against Bell on behalf of the City and the Chamber. (Employers' SOF, ¶ 47.) Subsequently, Rodriguez added his own cross-complaint against Bell. (<u>Id.</u>, ¶ 50.)

Nautilus fully defended the City and the Chamber in the Underlying Action, but did not do the same for Bell. (<u>Id.</u>, 53.) Though Nautilus' coverage counsel told Bell that Nautilus would share in Bell's defense under a reservation of rights, Nautilus did not defend Bell. Bell's commercial liability insurer, Employers, therefore funded Bell's entire defense in the Underlying Action. (<u>Id.</u>, ¶ 54.; Nautilus SOF, ¶ 22.)

Nevertheless, as trial approached, Nautilus authorized a settlement for the Nautilus Policy limit of $1,000,000 on behalf of the Chamber, and the City, and Bell. (<u>Id.</u>, ¶ 55.) Two days later,

---

[1] The underlying action was dismissed on December 31, 2013.

4

Nautilus authorized a second settlement for the same amount, but only on behalf of the Chamber and the City, excluding Bell. (Id., ¶ 56.)  Rodriguez accepted the second offer, and continued to pursue his claim against Bell. (Id., ¶ 57.) Bell eventually settled with Rodriguez for $175,000, which was paid by Employers. (Id., ¶ 59; Nautilus' SOF, ¶ 24.)

Prior to either of the settlement offers in the Underlying Action, Plaintiff Nautilus initiated the present action against Defendants Employers and Bell in this court, seeking declaratory relief concerning its coverage obligations to Bell. (Dkt. No. 1.) Within days of settling with Rodriguez around Bell, Nautilus amended its complaint to add further claims against Employers and Bell. (Employers SOF, ¶ 58.)  These additional claims seek to recover the $1,000,000 settlement Nautilus paid on behalf of the Chamber and the City, as well expenses Nautilus incurred defending the Chamber and City in the Underlying Action.

Bell later filed a First Amended Counterclaim against Nautilus, alleging causes of action for declaratory relief, breach of contract, and bad faith.  Employers filed a separate counterclaim against Nautilus, seeking declaratory relief as well as indemnification and reimbursement for expenses incurred defending Bell in the Underlying Action.

The parties now bring four separate motions for summary judgment, which overlap to a large degree.  In essence, all parties seek summary judgment on their respective declaratory relief claims regarding Nautilus' obligations to Bell under the Nautilus policy. The parties also seek summary judgment with respect to Nautilus' indemnification and reimbursement claims, Bell's breach of contract

and bad faith claims, and Employers' indemnification and contribution claims.

## II. Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id. **III.**

**III. Discussion**

    A. Whether Bell Is An Additional Insured

A threshold issue central to all four motions is whether Bell is an additional insured under the Nautilus Policy issued to the Chamber. The service contract between the Chamber and Bell required the Chamber "to obtain Event insurance and to name Bell Event Services and the City of Hermosa Beach as additionally insured." (Bell SUF 21.) That event insurance, the Nautilus Policy, included the following endorsement:

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
**SCHEDULE**
**Name Of Additional Insured Person(s) Or Organization(s):**

7

```
     BELL EVENT SERVICES- FOR HERMOSA FIESTA EVENT ON 5/29/10-
     5/31/10 & 9/4/10-9/6/10
     SCOTT HUBBELL PRODUCTIONS, INC, KATHY HUBBELL, EVENT-
     5/29-5/31/10 & 9/4-9/6/10
     CITY OF HERMOSA BEACH, ITS OFFICERS, AGENTS, EMPLOYEES
     & VOLUNTEERS-PUBLIC WRK
```

   **A.   Section II – Who Is An Insured** is amended to include
        as an additional insured the person(s) or
        organization(s) shown in the Schedule, but only with
        respect to liability for "bodily injury", "property
        damage" or "personal and advertising injury" caused,
        in whole or in part, by:
        **1.** Your acts or omissions; or
        **2.** The acts or omissions of those acting on your
        behalf;
        in the performance of your ongoing operations for
        the additional insured(s) at the location(s)
        designated above.

(Bell SUF 22.)

The meaning of an insurance policy and the scope of its coverage are questions of law appropriate to resolution on summary judgment. Brucia v. Hartford Accident and Indem., 307 F.Supp.2d 1079, 1082 (N.D. Cal. 2003) (citing Western Mut. Ins. Co. v. Yamamoto, 29 Cal. App. 4th 1474, 1481 (1994). Policy language must be interpreted as a whole, and in the context of the particular circumstances of the case. MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 648 (2003). A policy should be interpreted according to the plain meaning of its terms, but may be ambiguous if it is capable of multiple reasonable constructions. Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1147 (9th Cir. 1998). Any ambiguities must be resolved in favor of coverage. Id.; MacKinnon, 31 Cal.4th at 648.

Here, the parties do not dispute that the term "your" refers to the Chamber. Section II of the Additional Insured endorsement therefore reads to apply "to include as an additional insured the person(s) or organization(s) shown in the Schedule" with respect to

certain injuries caused by (1) "[the Chamber's] acts or omissions" or (2) "[t]he acts or omissions of those acting on [the Chamber's] behalf; in the performance of [the Chamber's] ongoing operations for the additional insured(s) . . . designated above." The parties also agree that the Chamber did not perform any operations for Bell, but did perform operations for the City.

Nautilus argues that the Additional Insured provision would only be triggered, with respect to a particular additional insured listed in the Schedule, if the Chamber were performing operations specifically for that one particular entity. In other words, Nautilus contends that the plain meaning of the policy establishes that Bell would only be an additional insured for injuries resulting from the Chamber's acts or omissions in the course of performing operations <u>for Bell</u>.

Nautilus' position is untenable. As an initial matter, Nautilus supports its argument with a misleading and disingenuous recitation of the Additional Insured provision. While the provision actually refers to "the performance of [the Chamber's] ongoing operations for the additional <u>insured(s)</u>," Nautilus cites the provision to read: "the performance of [the Chamber's] ongoing operations for the additional <u>insured ... .</u>" (Bell SUF 22; Nautilus Motion for Summary Judgment, Dkt. 57 at 9::6-7 (emphases added.)) Nautilus' omission is important. The Additional Insured provision refers not to a single insured, but to additional insured(s). Indeed, the Schedule of additional insureds lists not one entity, but three. Nautilus' desired construction therefore depends not on the plain meaning of the terms as written, but rather on some alteration of those terms. For example, the

9

phrases, "the additional <u>insured</u>," or "for <u>that</u> additional insured," might support Nautilus' arguments. Those phrases, however, do not appear in the policy.

Nor do the circumstances here suggest the plain meaning Nautilus advances. The contract between the Chamber and Bell required the Chamber to name Bell as an additional insured, and the Chamber paid an additional premium specifically to include Bell as such. At the same time, as reflected in the Bell-Chamber contract, all parties were aware that the Chamber would not be performing any operations on Bell's behalf. Were the Additional Insurance provision to limit Bell's coverage to circumstances that did not exist, Bell's inclusion in that provision would be totally superfluous, and any supposed coverage illusory. Insurance policies, like all contracts, should not be construed in a way that renders no benefit to one of the parties. <u>Maryland Cas. Co. v. Reeder</u>, 221 Cal. App. 3d 961, 968 (1990). It is, furthermore, "a very fundamental principle that policy language be so construed as to give effect to every term." <u>Mirpad, LLC v. Cal. Ins. Guar. Assoc.</u>, 132 Cal. App. 4th 1058, 1072 (2005).

Nautilus contends that Bell's potential coverage was not illusory because Bell could, theoretically, have asked the Chamber to do something for Bell in the middle of the Fiesta. This argument is not persuasive in light of the facts known to the parties when the Additional Insured endorsement was signed. Given the wording of that endorsement, and the surrounding circumstances, the plain meaning of the Policy does not exclude Bell as an additional insured. Because even ambiguous language must be

10

construed in favor of coverage, Bell did qualify as an Additional Insured under the Nautilus Policy.[2]

B. Subrogation and Indemnification Claims

The services contract between Bell and the Chamber included an indemnification provision, under which Bell agreed to indemnify the Chamber for all liabilities, damages, actions, costs, losses, claims, and expenses arising from personal injury, property damage, or lost profits arising out of Bell's acts or omissions. This indemnification clause would apply unless the damage or injury in question resulted from the Chamber's "sole negligence, gross negligence, or willful misconduct."

The Nautilus Policy excludes coverage for "'bodily injury' . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The parties appear to agree that the Bell-Chamber contract <u>might</u> qualify as such an "insured contract," depending on the allocation of responsibility for the underlying accident between Bell and the Chamber.

Nautilus contends that it is entitled to subrogate to the Chamber's right to indemnification from Bell. Bell and Employers seek summary judgment on Nautilus' subrogation claims, arguing that Nautilus has no right to recover against either Bell or Employers.

---

[2] Nautilus' reference to a "Separation of Insureds" provision, which states that coverage applies "Separately to each insured . . . ," does little to resolve any ambiguity. Such severability clauses are generally intended not to limit coverage, but rather to prevent exclusions applicable to one insured from applying to co-insureds. <u>Minkler v. Safeco Ins. Co. of Am.</u>, 49 Cal.4th 315, 324 (2010) (citing <u>Carbone v. Gen. Accident Ins. Co.</u>, 937 F.Supp. 413, 418 (E.D. Pa. 1996).

As discussed above, Bell was Nautilus' insured as a result of the Nautilus Policy's Additional Insured endorsement. Generally, an insurer has no right of subrogation against its own insured, even if the insured's negligence caused the injury. St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp., 65 Cal. App. 3d 66, 75-76 (1976). This rule does not apply, however, if the policy does not cover the insured for the particular loss or liability. Truck Ins. Exchange v. County of Los Angeles, 95 Cal. App. 4th 13, 21-22 (2002).

Nautilus' argument, though not clearly presented, appears to be that Bell agreed to assume liability for its own negligent acts by dint of the indemnification clause in the Bell-Chamber contract. The Nautilus Policy, the argument goes, excluded coverage for bodily injury claims arising out of "insured contracts" such as the Bell-Chamber contract. Thus, Nautilus contends, because (1) Bell contractually agreed to indemnify the Chamber, (2) Nautilus covered the Chamber's liabilities, and (3) Bell's contractual liability is not covered by the Nautilus Policy, Nautilus can recover from Bell the amount Nautilus paid on the Chamber's behalf.

Both parties dance around one critical issue: the indemnification provision in the Bell-Chamber contract only applies to Bell's negligent acts or omissions, and not to injuries resulting from the Chamber's "sole negligence, gross negligence, or willful misconduct." Nautilus has submitted the declaration of its expert, Carl Sheriff, who essentially opines that Bell was at least partially at fault and the Chamber was not grossly negligent. Bell and Employers have submitted evidence that the Surf Club spilled the grease that caused the underlying accident, that the

Chamber failed to adequately supervise the Surf Club or address the spill, and that, in the Chamber's own estimation, Bell "is not responsible for any of this." Though Employers protests that "Mr. Sheriff's opinions are not supported by the facts," that argument is best presented to a jury. Because there is a genuine dispute regarding the highly material question whether the Chamber's sole or gross negligence caused Mr. Rodriguez's underlying injury, all motions concerning Nautilus' subrogation and indemnification claims must be denied.

      C.   Nautilus' First Amended Complaint

Because Bell was an additional insured, Nautilus' motions for summary judgment on its claims for declaratory relief that it had no duty to defend or indemnify Bell or contribute to Bell's defense costs must be denied. Because a genuine dispute exists regarding Bell and the Chamber's respective culpability, summary judgment regarding Bell's duty to indemnify and Nautilus' subrogation claims is also denied.

      D.   Employers' First Amended Counterclaim

As discussed above, the Nautilus Policy applied to Bell as primary coverage. Employers' Motion for Summary Judgment is therefore, GRANTED insofar as it relates to its own First through Fourth causes of action and Nautilus' claims, with the exception of Nautilus' subrogation and indemnification claims. Those claims, like Employers' Fifth Cause of Action, involve a disputed issue of material fact regarding the Bell and the Chambers' respective roles in the underlying accident. Employers' motion is therefore DENIED with respect to Employers' Fifth Cause of Action.

///

13

C. Bell's First Amended Counterclaim

Bell's First Amended Counterclaim seeks declaratory relief mirroring Nautilus' complaint. For the reasons stated above, Bell's Motion for Summary Judgment is GRANTED, insofar as it seeks a declaratory judgment that the Nautilus Policy provides primary coverage to Bell as an additional insured.

Nautilus, however, also seeks summary judgment on Bell's counterclaim causes of action for breach of contract and bad faith. Nautilus argues that Bell cannot succeed on either claim because Employers provided Bell with a full defense and Bell suffered no economic damages. (Dkt. No. 36).

In Emerald Bay Community Association v. Golden Eagle Insuance Corporation, as here, an insurer declined to pay certain of its insured's defense and settlement costs, which were then paid by another insurer. Emerald Bay Cmty. Assoc. v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1083-85 (2005). In discussing the insured's subsequent breach of contract claim against the non-defending insurer, the court explained:

> The fact that several insurance policies may cover the same risk does not increase the insured's right to recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery.

Id. at 1090 (quoting Fireman's Fund Ins. Co. V. Maryland Cas. Co., 65 Cal. App. 4th 1279 (1998) (quotation marks omitted). Similarly, with respect to the insured's bad faith claim, the court stated that "where one insurer fully protects the insured by providing a

14

defense and full coverage for a claim, a second insurer's refusal to defend generally cannot support a tort action for breach of the covenant of good faith and fair dealing because the latter's conduct will not enhance the insured's cost of defending itself or its exposure to liability." Id. at 1093.

Bell does not dispute that Employers provided Bell with a full defense. Rather, Bell argues that it suffered losses of:

1. Gas and mileage expenses of $75.23 related to depositions and hearings in the Underlying Action; and
2. Unspecified loss of earnings related to Michael Bell's inability to meet with clients, make estimates for jobs, and manage staff; and
3. Similar losses in connection with this action.

(Declaration of Michael Bell ¶¶ 5-7.) Michael Bell's declaration constitutes the only evidence of these losses. A "self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." FTC v. Publ. Clearing House, Inc., 104. F.3d 1168, 1171 (9th Cir. 1997). Absent any evidence of losses other than Bell's self-serving statements, Bell's claims for breach of contract and bad faith cannot succeed. Nautilus' Motion for Summary Judgment is GRANTED, insofar as it relates to these claims.

**IV.  Conclusion**

For the reasons stated above, the parties' motions for summary judgment are GRANTED in part and DENIED in part. Judgment is granted against Nautilus on all claims pertaining to Bell's coverage as an Additional Insured under the Nautilus Policy and Nautilus' duties to Bell, and Employers' claims related thereto. Judgment is granted against Bell with respect to its breach of contract and bad faith causes of action against Nautilus. Summary

15

1  Judgment is denied with respect to all claims related to Nautilus'
2  subrogation and indemnification claims based upon the
3  indemnification provision of the Bell-Chamber contract, which will
4  ultimately turn on the disputed question whether the underlying
5  injuries resulted from the Chamber's "sole negligence, gross
6  negligence, or willful misconduct."

IT IS SO ORDERED.

Dated: May 6, 2014

　　　　　　　　　　　　　　　　DEAN D. PREGERSON
　　　　　　　　　　　　　　　　United States District Judge